1  ANTHONY J. SPERBER, Bar No. 197962
   LAW OFFICE OF ANTHONY J. SPERBER
2  1808 Sixth Street, Berkeley, CA 94710
   Tel: 510.845.8844
3  Fax: 510.845.1998
   anthony@sperberlaw.com
4
   KURT W. DREGER, Bar No. 283384
5  LAW OFFICE OF KURT W. DREGER
   848 Mohawk Drive, Livermore, CA 94551
6  Tel: 925.605.9261
   Fax: 925.294.8012
7  kurt@dregerlawoffices.com
8  Attorneys for Plaintiff
   JUSTIN SHEPHERD
9

10                    **UNITED STATES DISTRICT COURT**

11                    **EASTERN DISTRICT OF CALIFORNIA**

12                          **FRESNO DIVISION**

13

| | |
|---|---|
| 14  JUSTIN SHEPHERD, | **CASE NO.  1:14-cv-01901-DAD-BAM** |
| 15            Plaintiff, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| 16      v. | |
| 17  KOHL'S DEPARTMENT STORES, INC., and DOES 1 through 100, | 1. DISABILITY DISCRIMINATION IN VIOLATION OF THE FAIR EMPLOYMENT & HOUSING ACT; |
| 18            Defendants. | 2. FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS IN VIOLATION OF FAIR EMPLOYMENT & HOUSING ACT; |
| 19 | |
| 20 | 3. FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF THE FAIR EMPLOYMENT & HOUSING ACT; |
| 21 | |
| 22 | 4. INVASION OF PRIVACY; |
| 23 | 5. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; |
| 24 | |
| 25 | 6. BREACH OF IMPLIED CONTRACT & COVENANT OF GOOD FAITH AND FAIR DEALING; |
| 26 | 7. DEFAMATION PER SE |

27

28

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 1 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

Plaintiff JUSTIN SHEPHERD ("PLAINTIFF") alleges as follows:

## JURISDICTION AND VENUE

1.    PLAINTIFF is, and at all times mentioned herein was, an individual residing in the State of California.

2.    Defendant KOHL'S DEPARTMENT STORES, INC. ("KOHL'S") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Menomonee Falls, Wisconsin.

3.    PLAINTIFF is informed and believes, and thereon alleges, that at all times material hereto, KOHL'S is and at all times mentioned in this Complaint was a Wisconsin department store with a substantial, pervasive and long-term and on-going business presence in California in general and in Stanislaus County in particular where KOHL'S engages in the business of marketing, promoting, distributing, buying, and selling clothing, house wares, and related merchandise to the general public, among its other activities.

4.    The tortious acts complained of herein were committed, in part, in the State of California and PLAINTIFF sustained injury in this state as a consequence of these tortious acts.  The jurisdiction of this court is invoked pursuant to 28 U.S.C. 1332(a) and 1441(a), which confer subject matter jurisdiction on the United States District Court in all cases in which there is a diversity of citizenship and the amount in controversy exceeds $75,000, excluding interest and costs.  Venue is proper pursuant to 28 U.S.C. 1391(a).

5.    PLAINTIFF does not know the true names of DOES 1 through 100, inclusive, and therefore sues them by those fictitious names.  PLAINTIFF will amend this Complaint to show the true identities and capacities of the DOE Defendants when they have been ascertained.

## GENERAL ALLEGATIONS

6.    PLAINTIFF hereby incorporates by reference the preceding paragraphs of this Complaint.

7.    The acts and omissions of KOHL'S and DOES 1 through 100, inclusive, (collectively referred to as "DEFENDANTS") alleged herein, except as otherwise noted, occurred in the County of

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 2 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

Stanislaus, State of California.

8.    In June 2006, DEFENDANTS hired PLAINTIFF as a Material Handler at KOHL'S regional distribution center in Patterson, California. PLAINTIFF'S employment was subject to KOHL'S employment policies as documented in the employee handbook.

9.    PLAINTIFF was employed by DEFENDANTS for a period exceeding seven and one-half years.  During his employment PLAINTIFF was subject to periodic job performance appraisals. PLAINTIFF received favorable job performance reviews.

10.    In 2011, PLAINTIFF was diagnosed with acute anxiety, a condition that can be substantially alleviated with various pharmaceutical drugs, as well as through the therapeutic use of medical marijuana. PLAINTIFF'S primary care physician agreed with a local clinic's determination that PLAINTIFF would be a good candidate for a medical marijuana prescription.  A legally operating medical marijuana dispensary reviewed the medical case write-up and issued PLAINTIFF a valid prescription, fully compliant with the California Compassionate Use Act.

11.    On January 13, 2014, PLAINTIFF was injured while working at KOHL'S. PLAINTIFF was advised by his immediate supervisor to go immediately to US Health Works, KOHL'S health care provider for workers' compensation purposes, for medical treatment of the injury.

12.    While at the US Health Works Facility on January 13, 2014, PLAINTIFF was informed by the clinician that it was KOHL'S policy that any employee injured at work must submit to mandatory drug screening *before medical treatment would be provided*. Under this pressure, PLAINTIFF reluctantly agreed to the drug testing because he wanted to receive prompt medical treatment for his injury.

13.    On January 16, 2014, PLAINTIFF received a telephone call from the drug testing company associated with US Health Works.  PLAINTIFF was told during this telephone call he had tested positive for minimal amounts of marijuana metabolites. This did not come as a surprise to PLAINTIFF because the licensed dispensary had informed him that small residuals of the metabolite could remain in the body several weeks after use. PLAINTIFF'S "positive drug test" was merely residue from his *legal and off-duty* use of medical marijuana *several days earlier* to treat a bona fide illness.

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 3 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

14. On January 21, 2014, PLAINTIFF was called into a meeting with KOHL'S Operations Manager Maurice Barrera and Human Resources representative Irma Ochoa. Mr. Barrera and Ms. Ochoa asked PLAINTIFF if he was aware of the drug testing results. PLAINTIFF responded he was, but explained that the result was from the legal use of medical marijuana—for which he had a valid prescription to treat his acute anxiety. PLAINTIFF had the medical marijuana prescription that had been signed by his physician in his possession at work and showed it to Mr. Barrera during the January 21 meeting. Mr. Barrera completely disregarded it.

15. DEFENDANTS suspended PLAINTIFF from work (by verbal action from Mr. Barrera and Ms. Ochoa) and told him they had to refer this matter to KOHL'S corporate human resources and departments. In response to PLAINTIFF'S protests about the unfairness of this decision, he was told the issue was no longer in their hands, but "up to Corporate HR/Legal." PLAINTIFF asked who he could speak with about this, but was not provided with any names or phone numbers.

16. The following day, January 22, 2014, PLAINTIFF tried to get in contact with someone at KOHL'S corporate offices in hopes of avoiding the termination of his employment. Since Mr. Barrera and Ms. Ochoa refused to supply PLAINTIFF with any KOHL'S contacts, he went online and called various KOHL'S corporate numbers. He finally made contact with someone named Elizabeth (last name unknown), who identified herself as a Human Resources manager in San Bernardino, and Ms. Ochoa's superior. PLAINTIFF left Elizabeth a voicemail asking for her to contact him in regards to his suspension.

17. On January 23, 2014, Elizabeth called PLAINTIFF back. PLAINTIFF told Elizabeth about his diagnosis for acute anxiety and that he was a medical marijuana cardholder. Elizabeth was rude and unsympathetic. PLAINTIFF explained that he was not under the influence at work, to which she replied that the positive result for marijuana metabolites showed otherwise (a factually inaccurate statement). Elizabeth then told PLAINTIFF, "You should have chosen a different medicine."

18. Later than day, January 24, 2014, PLAINTIFF received a voice mail from Ms. Ochoa stating that PLAINTIFF was immediately terminated from employment.

19. Included in DEFENDANTS' employment policies is KOHL'S Alcohol and Substance

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 4 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

Abuse Policy (Policy 150, § I.A.), which prohibits employees <u>at work</u> from consuming alcohol or illegal drugs, being intoxicated, and possessing alcohol or illegal drugs. PLAINTIFF did none of these things and therefore did not violate this policy. (The Alcohol and Substance Abuse Policy is attached as <u>Exhibit 1</u>.)

20.     In their policy documents, DEFENDANTS also attempt to dictate employees' off-duty behavior by prohibiting conduct "which adversely affects an Associate's job performance or adversely affects other interests of the company…" (Policy 150, § I.B). PLAINTIFF'S off-duty use of medical marijuana did not violate this policy because he last used the medication four days before the work shift in question and therefore it could not have adversely affected PLAINTIFF'S job performance.

21.     In their policy documents, DEFENDANTS expressly recognize and adopt the developing national acceptance of medical marijuana as a legitimate medical treatment under certain circumstances. Specifically, Policy 150, § I.K., which applies to KOHL'S operations in California and 14 other jurisdiction, provides: *"No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either: (a) The Person's status as a registered medical marijuana cardholder; or (b) A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites."*

22.     KOHL'S Drug Testing Policy (Policy 126E), contains identical language. DEFENDANTS' violated their own written policies and agreement with PLAINTIFF by terminating him for using medical marijuana off-duty, especially since it had no effect on his work performance. (The Drug Testing Policy is attached as <u>Exhibit 2</u>.)

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23.     The Fair Employment and Housing Act ("FEHA") requires a complaining employee to exhaust his administrative remedies by filing a complaint with the Department of Fair Employment and Housing ("DFEH") within one year of the unlawful conduct, and to file his civil complaint within one year of receiving a "Right to Sue" letter from the DFEH. Plaintiff was fired on January 24, 2014. He filed his initial charge with the DFEH on September 2, 2014, well within the one-year limitations period. On March 5, 2015, Plaintiff amended his DFEH charge to specifically reference claims for

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 5 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

failure to engage in the interactive process and failure to accommodate a disability. Under the "relation

back" doctrine, Plaintiff's amended DFEH charge related back to his initial DFEH charge.  Plaintiff

served both DFEH complaints and Right to Sue letters on Defendant. Therefore, Plaintiff exhausted his

administrative remedies. (The DFEH complaints and Right to Sue letters are attached as <u>Exhibit 3</u>.)

**FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF FEHA**
**(AGAINST DEFENDANT KOHL'S)**

24.    PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

25.    At all times relevant to this Complaint, the California Fair Employment and Housing Act, codified at Government Code Section 12940, *et seq.* ("FEHA") and its implementing regulations were in full force and effect and binding on KOHL'S.

26.    Pursuant to Government Code Section 12940(a), it is unlawful for an employer to discriminate against an employee because of the employee's physical disability.

27.    Pursuant to Government Code Sections 12926 and 12926.1, PLAINTIFF has a physical disability, a record of physical disability, and/or was perceived as or treated as having a physical disability by KOHL'S.

28.    PLAINTIFF was able to perform the essential functions of his job as a Material Handler with reasonable accommodations for his disability.

29.    PLAINTIFF'S physical disability was a motivating factor in KOHL'S decision to terminate his employment.

30.    PLAINTIFF did not violate any of KOHL'S alcohol and drug abuse policies, yet DEFENDANTS falsely claimed that PLAINTIFF had violated these policies and used those purported violations as a pretext to justify the termination of his employment.

31.    As the legal result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses of wages, salary, benefits and additional amounts of money that PLAINTIFF would have received if DEFENDANTS had not discriminated against him as alleged *supra*.  As a result of such discrimination and consequent harm, PLAINTIFF has suffered damages in an amount according to proof.

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 6 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

32.     As the further legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, which caused PLAINTIFF to suffer damages in an amount according to proof.

33.     As the further legal result of DEFENDANTS' conduct, PLAINTIFF has been harmed in that he has suffered the intangible loss of employment-related opportunities such as experience and status in the positions previously held by him.

34.     The above-cited conduct of DEFENDANTS was done with malice, fraud and oppression, and in reckless disregard of PLAINTIFF's rights under FEHA. PLAINTIFF is thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

35.     Pursuant to Government Code Sections 12940 and 12965(b), DEFENDANTS are liable for all relief necessary to make PLAINTIFF whole, including front and back pay, interest thereon, compensation for any special damages suffered as a result of the discrimination, general damages, and punitive damages. PLAINTIFF is also entitled to his reasonable attorneys' fees and costs of suit.

**SECOND CAUSE OF ACTION**
**FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS IN VIOLATION OF FEHA**
**(AGAINST DEFENDANT KOHL'S)**

36.     PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

37.     FEHA makes it an unlawful employment practice for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations for an employee with a known physical disability or known medical condition. *See* Cal. Govt. Code § 12940(n).

38.     On January 21, 2014, DEFENDANTS called PLAINTIFF into a meeting to discuss his positive test results for marijuana metabolites.   PLAINTIFF explained that he suffered from acute anxiety, for which he had a valid medical marijuana prescription from a licensed physician. PLAINTIFF showed DEFENDANTS proof of his valid medical marijuana prescription, which he kept in his locker at work.   DEFENDANTS ignored PLAINTIFF'S offer of proof and instead dismissed him from the meeting without further discussion.   At no time did DEFENDANTS attempt to engage or

interact with PLAINTIFF about any possible accommodations that would allow PLAINTIFF to continue working for KOHL'S and to treat his medical condition with or without medical marijuana. PLAINTIFF made a good faith effort to start a dialogue about his medical condition and ways DEFENDANTS could make an accommodation but it fell on deaf ears.

39.   On January 22, 2014, PLAINTIFF told Elizabeth, a senior Human Resources representative, about his anxiety condition and status as a medical marijuana cardholder. She coldly ignored his pleas, offering only that he should have chosen a different medicine. No effort was made by Elizabeth to discuss possible ways PLAINTIFF could remain employed while treating his condition in a manner that did not offend KOHL'S sensibilities.

40.   On January 23, 2014 DEFENDANTS terminated PLAINTIFF'S employment by leaving a voicemail simply stating he was fired. Once again, PLAINTIFF was not afforded a chance to discuss the possibility that a reasonable accommodation could be made such that he could be allowed to treat his medical condition with medical marijuana under certain restrictions, or perhaps with other medication.

41.   Pursuant to Government Code Sections 12940 and 12965(b), DEFENDANTS are liable for all relief necessary to make PLAINTIFF whole, including reinstatement with front and back pay, interest thereon, compensation for any special damage suffered as a result of the discrimination, general damages, punitive damages and reasonable attorneys' fees and costs of suit.

42.   As the legal result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses of wages, salary, benefits and additional amounts of money that PLAINTIFF would have received if DEFENDANTS had not discriminated against him as alleged above. As a result of such discrimination and consequent harm, PLAINTIFF has suffered such damages in an amount according to proof.

43.   As the further legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, which caused PLAINTIFF to suffer damages in an amount according to proof.

As the further legal result of DEFENDANTS' conduct, PLAINTIFF has been harmed in that he has

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 8 - | CASE NO. 1:14-CV-01901 DAD BAM |
| --- | --- | --- |

suffered the intangible loss of such employment-related opportunities such as experience and status in the positions previously held by him.

44.    The above-cited conduct of DEFENDANTS was done with malice, fraud and oppression, and in reckless disregard of PLAINTIFF's rights under the FEHA. PLAINTIFF is thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

### THIRD CAUSE OF ACTION
### FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF FEHA
### (AGAINST DEFENDANT KOHL'S)

45.    PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

46.    Pursuant to Government Code Section 12940(m), it is unlawful for an employer to fail to make reasonable accommodation for the known physical disability of an employee.

47.    DEFENDANTS knew PLAINTIFF suffered from a disability because he told them so during a meeting on January 21, 2014.  At the same meeting, PLAINTIFF offered to show proof from his physician of this condition and the related medical marijuana prescription, but DEFENDANTS rebuffed his efforts. DEFENDANTS failed to make effort to discuss, let alone offer, any accommodations to PLAINTIFF.

48.    The following day, PLAINTIFF told Elizabeth, a senior Human Resources representative, about his anxiety condition and status as a medical marijuana cardholder. She also ignored his pleas, without making any effort to discuss possible ways PLAINTIFF could remain employed while treating his condition in a manner that did not offend KOHL'S sensibilities.

49.    On January 22, 2015, DEFENDANTS terminated PLAINTIFF's employment without a single discussion concerning any reasonable accommodation, and did not in fact provide any reasonable accommodation when several were available.

50.    Pursuant to Government Code Sections 12940 and 12965(b), DEFENDANTS are liable for all relief necessary to make PLAINTIFF whole, including reinstatement with front and back pay, interest thereon, compensation for any special damage suffered as a result of the discrimination, general damages, punitive damages and reasonable attorneys' fees and costs of suit.

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 9 - | CASE NO. 1:14-CV-01901 DAD BAM |

51.   As the legal result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses of wages, salary, benefits and additional amounts of money that PLAINTIFF would have received if DEFENDANTS had not discriminated against him as alleged above. As a result of such discrimination and consequent harm, PLAINTIFF has suffered such damages in an amount according to proof.

52.   As the further legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, which caused PLAINTIFF to suffer damages in an amount according to proof.

53.   As the further legal result of DEFENDANTS' conduct, PLAINTIFF has been harmed in that he has suffered the intangible loss of such employment-related opportunities such as experience and status in the positions previously held by him.

54.   The above-cited conduct of DEFENDANTS was done with malice, fraud and oppression, and in reckless disregard of PLAINTIFF's rights under FEHA. PLAINTIFF is thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

## FOURTH CAUSE OF ACTION
## INVASION OF PRIVACY
## (AGAINST DEFENDANT KOHL'S)

55.   PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

56.   PLAINTIFF suffered from a medical condition and received medical treatment, both of which were private matters protected by PLAINTIFF'S constitutional right to privacy. PLAINTIFF made the decision to treat his illness with legally obtained medical marijuana in consultation with his physician. PLAINTIFF'S decision to treat his illness in consultation with his physician with medical marijuana obtained and used legally is a private concern that DEFENDANTS had no right to invade.

57.   PLAINTIFF expected that his off-duty lawful treatment of his medical condition would not be discovered through a mandatory drug test and then used against him to terminate his employment and tarnish his employment record. PLAINTIFF'S expectation of privacy as to his medical condition and chosen course of treatment was objectively reasonable because a reasonable

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 10 - | CASE NO. 1:14-CV-01901 DAD BAM |

person expects their medical condition and treatment to be remain private and not be used against them in their employment. PLAINTIFF'S expectation of privacy was further supported by DEFENDANTS' <u>multiple written policies and promises</u> to PLAINTIFF not to take adverse action against him based on his status as a medical marijuana card holder or his lawful and careful off-duty use of medical marijuana.

58.    DEFENDANTS obtained PLAINTIFF'S consent to be drug tested under false pretenses because such consent was given only after DEFENDANTS gave him false assurances they would not take adverse action against him as a result of a positive test for medical marijuana.

59.    The alleged consent was also coerced, and therefore not voluntary or informed, because DEFENDANTS withheld medical treatment from PLAINTIFF until he submitted to a drug test— despite the fact he was inured and in considerable pain.

60.    Because the consent was fraudulently obtained and coerced, DEFENDENTS invaded PLAINTIFF'S privacy by obtaining PLAINTIFF'S urine from him, even though they had no indication whatsoever that he was under the influence at work (because he was not).

61.    Moreover, even if the consent had been knowing and lawfully obtained, DEFENDANTS nevertheless unlawfully *used* the information gathered from the urine sample. Specifically, they used the information to terminate PLAINTIFF'S employment, despite their written promises not to do so. This deceptive procurement and adverse use of PLAINTIFF's urine constituted a violation of PLAINTIFF's informational and autonomy privacy.

62.    As the legal result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses of wages, salary, benefits and additional amounts of money that PLAINTIFF would have received if DEFENDANTS had not invaded his autonomy privacy.  As a result of such conduct and consequent harm, PLAINTIFF has suffered such damages in an amount according to proof.

63.    As the further legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, which caused PLAINTIFF to suffer damages in an amount according to proof.

64.    As the further legal result of DEFENDANTS' conduct, PLAINTIFF has been harmed in

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 11 - | CASE NO. 1:14-CV-01901 DAD BAM |
| --- | --- | --- |

that he has suffered the intangible loss of employment-related opportunities such as experience and status in the positions previously held by him.

65.     The above-cited conduct of DEFENDANTS was done with malice, fraud and oppression, and in reckless disregard of PLAINTIFF's rights. PLAINTIFF is thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

**FIFTH CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(AGAINST DEFENDANT KOHL'S)**

66.     PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

67.     If an employer fires an employee for a reason prohibited by public policy, such as the policies enunciated and advanced by FEHA, it constitutes wrongful termination in violation of public policy. *See Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1138; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 612.

68.     DEFENDANTS' conduct, in discriminating against PLAINTIFF for exercising his rights under FEHA, violated the public policies underlying this statute.

69.     As the legal result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses of wages, salary, benefits and additional amounts of money that PLAINTIFF would have received if DEFENDANTS had not discriminated against him as alleged *supra*. As a result of such discrimination and consequent harm, PLAINTIFF has suffered such damages in an amount according to proof.

70.     As the further legal result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, which caused PLAINTIFF to suffer damages in an amount according to proof.

71.     As the further legal result of DEFENDANTS' conduct, PLAINTIFF has been harmed in that he has suffered the intangible loss of employment-related opportunities such as experience and status in the positions previously held by him, causing PLAINTIFF to suffer damages in an amount according to proof.

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 12 - | CASE NO. 1:14-CV-01901 DAD BAM |
| --- | --- | --- |

72.     The above-cited conduct of DEFENDANTS was done with malice, fraud and oppression, and in reckless disregard of PLAINTIFF's rights under the FEHA. PLAINTIFF is thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

## SIXTH CAUSE OF ACTION
**BREACH OF IMPLIED CONTRACT & COVENANT OF GOOD FAITH & FAIR DEALING**
**(AGAINST DEFENDANT KOHL'S)**

73.     PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

73.     DEFENDANTS' Alcohol and Substance Abuse policy 150, section K, and Policy 126E, section IV, regarding employee use of medical marijuana, contain the following identical language:

74.     In Alaska, Arizona, California, Colorado, D.C., Maine, Michigan, Montana, Nevada, New jersey, New Mexico, Oregon, Rhode Island, Vermont, no person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:

(a)     The person's status as a registered medical marijuana cardholder; or

(b)     A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites.

75.     DEFENDANTS' Alcohol and Substance Abuse Policy 150, section F states that "Associates will receive an opportunity to provide a written explanation of positive test results."

76.     DEFENDANTS' Alcohol and Substance Abuse Policy 150, section G states:

(a)     If an Associate is involved in an accident, which involved damage to company property that is outside of normal daily wear and tear on the building or equipment, a post accident drug test will be performed; and

(b)     If an Associate has an accident on power or non-power related equipment, which requires any Associate to seek medical treatment, a post-accident drug test will be performed.

77.     PLAINTIFF is informed and believes and based thereon alleges that DEFENDANTS promulgated the policies set forth in the written Alcohol and Substance Abuse Policies as a systematic approach to personnel relations, to provide a clear and uniform alternative to haphazard practices, understandings and arrangements with the Company.

78.     PLAINTIFF reasonably relied on the policies in DEFENDANTS' written Alcohol and

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 13 - | CASE NO. 1:14-CV-01901 DAD BAM |

1   Substance Abuse Policies, as the terms and conditions of his employment.

2         79.    Based on the foregoing, there existed an implied contract between PLAINTIFF and

3   DEFENDANTS that DEFENDANTS would comply with the policies promulgated in its written

4   Alcohol and Substance Abuse policies and elsewhere.

5         80.    PLAINTIFF has performed all conditions, covenants and promises to be performed on

6   PLAINTIFF's part under the implied contract of employment.

7         81.    DEFENDANTS breached the implied contract of employment with PLAINTIFF by

8   engaging in the following conduct:

9         (a)    Discriminating against him by terminating his employment because of his status

10  as a registered medical marijuana cardholder in California;

11        (b)    Discriminating against him by terminating his employment because he tested

12  positive for medical marijuana;

13        (c)    Failing and refusing to provide him with an opportunity to provide a written

14  explanation of his positive marijuana metabolite test results;

15        (d)    Compelling him to undergo drug testing even though he had not been involved

16  in an accident involving power or non-power equipment (PLAINTIFF had merely been injured on the

17  job after manually lifting cargo – there was no accident);

18        (e)    Stating that PLAINTIFF's employment was terminated for violating

19  DEFENDANTS' Alcohol and Substance Abuse policies when PLAINTIFF did not violate such

20  policies.

21        82.    Implied in every contract is the covenant of good faith and fair dealing, which requires

22  that neither party do anything to deprive the other party of the benefits of the agreement. *See e.g.,*

23  *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-84. DEFENDANTS breached the covenant

24  of good faith and fair dealing by violating the policies relied on by PLAINTIFF, accusing PLAINTIFF

25  of violating those same policies, and terminating PLAINTIFF'S employment on account of actions that

26  were specifically permitted by DEFENDANTS' own written policies, which became part of the

27  parties' employment agreement.

28

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 14 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

83.   As the proximate result of DEFENDANTS' breach of the implied contract of employment, PLAINTIFF has been damaged, in that PLAINTIFF has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

**SEVENTH CAUSE OF ACTION**
**DEFAMATION**
**(AGAINST DEFENDANT KOHL'S)**

84.   PLAINTIFF re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

85.   On January 24, 2014, DEFENDANTS fired PLAINTIFF. The reasons given were: (1) reporting to work under the influence of marijuana; (2) violating safety rules by being intoxicated at work; and (3) acting against the interest of KOHL'S by working while under the influence of drugs.

86.   DEFENDANTS documented these justifications for firing PLAINTIFF in at least two separate documents: (1) a January 24, 2014 letter from Human Resources Manager Irma Ochoa to PLAINTIFF, which asserted that he "violated Kohl's Distribution Center Alcohol and Substance Abuse Policy ..." ; and (2) a January 24, 2014 Associate Counseling Form, in which PLAINTIFF was accused of:  (1) reporting to work under the influence of marijuana; (2) violating safety rules by being intoxicated at work; and (3) acting against the interest of KOHL'S by working while under the influence of drugs.

87.   These two documents were both published to PLAINTIFF'S personnel file, where they remain today.

88.   The person who wrote these documents, Ms. Ochoa, also published them to at least two fellow employees: Mr. Barrera and Magaly Rico.

89.   The assertions contained in these personnel documents were false:

(a)   PLAINTIFF was not under the influence of marijuana or any other substance on the date in question—or at any other time while PLAINTIFF was at work.

(b)   PLAINTIFF did not violate KOHL'S policies governing drugs and alcohol because he was not ever under the influence while at work.  Rather, PLAINTIFF had used medical marijuana several days before the date in question, and could not possibly have been under the effects

| SECOND AMENDED COMPLAINT FOR DAMAGES | - 15 - | CASE NO. 1:14-CV-01901 DAD BAM |
|---|---|---|

1    of that use.

2              (c)    KOHL'S policies contained express exceptions to the drug testing policies for

3    California medical marijuana users. PLAINTIFF was covered by these exceptions because he was a

4    registered cardholder.

5          90.    The above publications were made negligently and recklessly because DEFENDANTS

6    undertook no investigation to ascertain the truth of the statements before making them. Moreover,

7    during the two years since PLAINTIFF was fired, he has multiple times informed DEFENDANTS of

8    the actual facts surrounding his positive drug test. DEFENDANTS have nevertheless refused to correct

9    PLAINTIFF'S personnel file so as to make it conform to the truth.

10         91.    These above publications were false and defamatory per se, in violation of Civil Code

11   Sections 45 and 45a, in that they accuse PLAINTIFF of: (1) doing drugs at work; (2) putting his

12   coworkers and customers at risk of injury; (3) violating multiple company policies; and (4) being fired

13   for gross misconduct that was so serious he was not eligible for progressive discipline.

14         92.    Because he was fired for the reasons stated, and the defamatory publications remain in

15   PLAINTIFF'S personnel file, the statements will continue to be published by DEFENDANTS, and

16   foreseeably republished by their recipients, all to the ongoing harm and injury to PLAINTIFF'S

17   business, professional, and personal reputations.

18         93.    PLAINTIFF seeks redress in this action for all foreseeable republications, including his

19   own compelled self-publication of these defamatory statements to third parties, including but not

20   limited to: (1) prospective employers: (2) family members; and (3) friends.

21         94.    The defamatory meaning of all of the above-described false and defamatory statements

22   and their reference to PLAINTIFF have been, and will be, understood by these above-referenced third-

23   party recipients.

24         95.    Each of these publications by DEFENDANTS were made with knowledge that no

25   investigation supported the unsubstantiated and false statements.

26         96.    As a proximate result of the publication and republication of these defamatory

27   statements by DEFENDANTS, PLAINTIFF has suffered injury to his personal, business and

28

1  professional reputation including suffering embarrassment, humiliation, anguish, fear, and potentially

2  lost employment opportunities, all to PLAINTIFF'S economic, emotional, and general damage in an

3  amount according to proof.

4         97.     DEFENDANTS committed the acts alleged herein recklessly, maliciously, fraudulently,

5  and oppressively, with a total disregard for PLAINTIFF'S well-being and reputation. PLAINTIFF is

6  thus entitled to recover punitive and exemplary damages from DEFENDANTS in an amount based on

7  the wealth and ability to pay according to proof at time of trial.

8  **JURY DEMAND**

9       PLAINTIFF demands a jury trial on all factual issues raised by this Complaint.

10  **PRAYER FOR RELIEF**

11       ACCORDINGLY, PLAINTIFF requests relief as follows:

12         1.     For special and economic damages in an amount to be proven at trial on the first,

13  second, third, fourth fifth, sixth, and seventh causes of action;

14         2.     For general and non-economic damages in an amount to be proven at trial on the first,

15  second, third, fourth, fifth and seventh causes of action;

16         3.     For punitive damages in an amount to be proven at trial on the first, second, third,

17  fourth, fifth and seventh causes of action;

18         4.     For reasonable attorneys' fees, including a "multiplier";

19         5.     For costs of suit;

20         6.     For interest at the maximum legal rate on all sums awarded; and

21         7.     For such other relief as the Court deems just and proper.

22  Dated: May 3, 2016           LAW OFFICE OF ANTHONY J. SPERBER

23                      LAW OFFICE OF KURT W. DREGER

24

25                By: _____

26                      Anthony J. Sperber
                    Attorneys for Plaintiff Justin Shepherd

27

28

# EXHIBIT 1



Welcome I

ASSOCIATE     DIVISIONS     APPLICATIONS

Home > Associate > 150

# 1.0 Alcohol and Substance Abuse

**Revised: 01/20/2012**

## Introduction

Kohl's is committed to providing a pleasant and safe working environment for all of our Associates. The use of illegal drugs or abuse of controlled substances or alcohol can pose a significant challenge to this commitment and negatively affect many Associates.

Substance abuse may result in a loss of work quality, damage to facilities, disruption of the work environment and potential Associate dishonesty; areas that affect all of us, not just the user.

Our commitment to a pleasant and safe working environment will not be compromised. As is more fully described below, any Associate found to be in the possession, involved in the distribution, or under the influence of any alcoholic substances or illegal drug while at work, may be terminated from employment with Kohl's and face possible prosecution for violation of the law.

Our stance on the issue of illegal drugs and substance abuse is not focused on the moral issues of this problem, but rather directed at eliminating the threat to the health, safety and security of our valued Associates and our legitimate business interest.

With these basic thoughts in mind, the following detailed policies and procedures have been established to ensure that we continue to maintain a work place free of drug and substance abuse.

## I. Policy

### A. Workplace Alcohol and Drug Prohibitions

Consumption of alcohol on the job, including during paid and unpaid break periods, on or off the premises is prohibited. The possession, consumption or distribution, in any way, of alcohol on company premises or in company vehicles is strictly forbidden.

The sale, use, possession, manufacture, distribution, dispensation of or being under the influence of any illegal drug or unauthorized controlled substance while on company time, on company premises, in a company vehicle, or anywhere on company business is prohibited. These prohibitions apply to paid and unpaid breaks or meal periods.

### B. Off the Job Site

Off-the-job abuse of alcohol or possession, use, manufacture, distribution, dispensation or sale of illegal drugs or controlled substances which adversely affects an Associate's job performance or adversely affects other interests of the company is prohibited.

### C. Under the Influence

Under the influence, for purposes of this policy, is any effect by a drug or alcohol or the combination of a drug and alcohol in any detectable manner. The symptoms of influence are not confined to those consistent with

JMS- 000052

misbehavior or to obvious impairment of physical or mental ability such as slurred speech or difficulty in maintaining balance. A determination of influence may be established by a lay person's opinion.

D. Legal Drugs

An Associate undergoing medical treatment which involves a prescribed or over-the-counter drug which may alter his or her physical or mental ability to perform work must report this use to Human Resources to determine whether the Associate may continue in their current assignment during such treatment. Failure to report such drug use is a violation of the Company's substance abuse policy.

E. Disciplinary Action

Violation of Kohl's alcohol or substance abuse policy can result in disciplinary action up to and including termination, even for the first offense. Kohl's reserves the right to discipline or terminate Associates convicted of an offense which involves the use, distribution, or possession of illegal drugs. Further, Kohl's reserves the right to discipline or terminate an Associate convicted of an offense which involves substance abuse having an effect on the safety of the Associate, co-workers, members of the public, job performance or the general safe efficient operation of any Kohl's facility.

In this same regard, Kohl's reserves the right to suspend Associates arrested for illegal substance or drug abuse pending outcome of all legal proceedings where the circumstances of the charge substantially relate to the circumstances of the Associate's position. All such suspensions will be pursuant to Kohl's suspension policy and procedure.

Given the seriousness of drug or substance abuse violations and potential risk to human safety, normal progressive disciplinary practice may be circumvented when dealing with drug or substance abuse offenses. Kohl's also may, within its sole discretion, condition continued employment of violators of this policy on participation in and compliance with the requirement of an alcohol and drug treatment program.

F. Testing

As part of the employment screening process, applicants for certain positions and/or current Associates promoted into certain positions will be required to submit to a drug/alcohol screening prior to employment or the start of the new position (as more fully set out in the Drug Testing Policy 126E). If the test process discloses the presence of one or more of the tested substances, the applicant/Associate will be so informed, disqualified for employment or terminated from employment, and not be considered for hire or re-hire for one year, unless the applicant/Associate is covered under section K of this policy.

Any applicant/Associate who declines to undergo a drug/alcohol screening or who tampers with any part of the testing or screening process will be denied employment or terminated from employment, and will be ineligible for hiring/re-hiring for one year following the test.

Kohl's reserves the right to require an Associate to submit to a breath, blood and/or urine alcohol/drug test when it has reasonable suspicion concerning an Associate's violation of this policy or the Associate has been involved in a workplace accident. Factors creating a reasonable suspicion include, but are not limited to, impairment, such as difficulties in maintaining balance, on-the-job accidents, slurred speech, body odors, bloodshot eyes, impaired judgment, or inability to perform his/her job in a safe manner.

Prior to testing, Associates must sign a form acknowledging familiarity with this policy and consenting to the test and release of the test results to Kohl's or they will be released from employment. Associates will receive an opportunity to provide a written explanation of positive test results.

The Company reserves the right to conduct pre-employment drug testing on all applicants in all or select Stores, Distribution Centers and Corporate locations upon reasonable notice and consistent with applicable local, state or federal law.

G. Injury on the Job – Distribution Centers

1. If an Associate is involved in an accident, which involved damage to company property that is outside of normal daily wear and tear on the building or equipment, a post accident drug test will be performed. Montana: Post-accident testing will be performed only for accidents resulting in damages in excess of $1,500 or bodily injury.

2. If an Associate has an accident on power or non-power related equipment, which requires any Associate to seek medical treatment, a post-accident drug test will be performed.

H. Right to Inspect

Kohl's reserves the right to inspect the property of all individuals while on company property. This right includes, but is not limited to, the inspection of vehicles, parcels, packages, purses, lunch boxes, briefcases, lockers, workstations, and desks.

I. Treatment

Associates who so request may be granted a medical leave of absence for the purpose of participating in a qualified in-patient or outpatient drug or alcohol rehabilitation program. The location should partner with Human Resources and comply the Americans with Disabilities Act (see Kohl's Policy 704).

J. Reporting

Associates who wish to report violations of the company drug/alcohol policies may report such violations to location management, location Loss Prevention Associates or utilize the Integrity Helpline at 800-837 PAYS (7297). This information will be treated confidentially and disseminated only on a need-to-know basis.

K. State Specific Exceptions

1. Alaska, Arizona, California, Colorado, D.C., Maine, Michigan, Montana, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont: No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:

a. The person's status as a registered medical marijuana cardholder; or
b. A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites.

2. Washington: No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:

a. The person's status as qualifying for protection under the state's medical marijuana law; or
b. A registered qualifying patient's positive drug test for marijuana components or metabolites, unless the patient used, possessed or was impaired by marijuana on the premises of the place of employment or during the hours of employment.

To qualify for protection under Washington's medical marijuana law, a patient must possess a signed statement on tamper-resistant paper from a Washington-licensed physician, physician assistant, naturopath, or advanced registered nurse practitioner who advised the patient of marijuana's risks and benefits and advised the patient that he or she may benefit from the medical use of marijuana.

Nothing in this policy prevents Kohl's from imposing discipline, up to and including termination, for any Associate, who used, possessed or was impaired by marijuana on the premises of the place of employment or during the hours of employment.

JMS- 000054

# EXHIBIT 2

Welcome

K

Home > Associate > 126E

# 126E Drug Testing

Revised: 01/20/2012

### I. Introduction

Kohl's is committed to providing a pleasant and safe working environment for all of our Associates. The use of illegal drugs or abuse of controlled substances can pose a significant challenge to this commitment and negatively affect all of our Associates.

### II. Policy

Our commitment to a pleasant and safe working environment will not be compromised. Any Associate under the influence of any illegal drug may have a conditional offer of employment rescinded except as prohibited by state law as more fully outlined below. Our stance on the issue of illegal drugs is not focused on the moral issues of this problem, but rather directed at eliminating the threat to health, safety and security of our valued Associates and our legitimate business interests. With these basic thoughts in mind, the following detailed procedures have been established

### III. Procedure

A. As part of the employment screening process, all new hire applicants and Associates being promoted/transferred into drug tested positions must review a copy of this Policy 126E and Kohl's Alcohol/Substance Abuse Policy 150

1. The applicant/Associate must sign the Acknowledgement of Notice, Consent, and Release Form (AR-016E). The form must be maintained in the Associate's medical file.
2. Rehires are required to test if their absence from the company is greater than 30 days.

B. The following positions will be required to submit to a drug test as a condition of employment

1. Stores: Store Executives, Area Supervisors, Overnight Associates (Ad Set Associates are not considered Overnight Associates), Loss Prevention Executives & Associates, and New Store Credit Greeters.
2. Corporate: All Associates and Executives in the Credit Division, Corporate Daycare, and Loss Prevention.
3. Distribution Centers: All Associates and Executives.
4. If an Associate is promoted or transferred into a position that requires a drug test from a position that did not require a drug test, a drug test will be required at the time of promotion or transfer.

C. Prior to sending an applicant for drug testing, a job offer must be made to the applicant contingent on the results of the drug test. This process applies to any positions listed in Section III.B of this policy.

1. The applicant/Associate must report for testing within 48 hours after the offer is accepted. If the applicant/Associate does not meet this deadline, the job offer may be rescinded.
2. The applicant/Associate must be given a chain of custody form and report to the store's designated testing facility.
3. If the test process discloses the presence of one or more tested substances, the applicant/Associate will be

so informed, disqualified for employment (see AR-100C) and will not be considered for hire or re-hire for one year, unless the applicant is covered under the laws outlined in Section IV of this policy.

4. Any applicant/Associate, who declines to undergo a drug test or tampers with any sample, will be denied employment.

5. Any applicant/Associate who is unable to provide a urine specimen due to a medical condition will be provided with the option to give an oral fluid specimen as an alternative. Loss Prevention (see KNet for contact information) must be contacted for instructions on how to accommodate this request.

D. Drug test results are sent by email. The results may be communicated in the following manner:

1. Negative: Associate's test results are clear. Print the email notification and place in Associate's medical file.

2. Pending MRO (Medical Review Office): The MRO needs additional information from the applicant (e.g., prescription information)

a. The MRO will make multiple attempts to contact the applicant. If the applicant is unreachable within 48 hours, the applicant is no longer eligible for employment.

b. If the applicant contacts the Company regarding their employment status, direct the applicant to contact the MRO at the number provided in the email notification.

3. Positive:

a. Applicant

If the test process discloses the presence of one or more tested substances, the applicant/Associate will be so informed, disqualified for employment (see AR-100C) and will not be considered for hire or re-hire for one year, unless the applicant is covered under the laws outlined in Section IV of this policy.

b. Associate:

Any current Associate whose drug test result discloses the presence of one or more tested substances will be so informed and Policy 150 will be followed.

E. Drug test results are confidential. Test results are not to be discussed with anyone outside of the Medical Review Office, Loss Prevention, or Human Resources.

**IV. State Specific Requirements**

A. Alaska, Arizona, California, Colorado, D.C., Maine, Michigan, Montana, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont: No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:

1. The person's status as a registered medical marijuana cardholder; or

2. A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites. Nothing in this policy prevents Kohl's from imposing discipline, up to and including termination, for any Associate who used, possessed or was impaired by marijuana at any Kohl's location or in the performance of Kohl's business.

B. Louisiana: Within seven (7) days of a written request, an employee may have access to any records relating to the drug test and any records relating to the results of any employment action taken because of the drug test.

C. Maine: An applicant with a contingent offer of employment must have taken his/her drug test and the store location must receive the results of the drug test prior to the Associate's Orientation

1. Prior to his/her drug test, an applicant/Associate must receive the following:

a. A copy of Kohl's drug testing policy (126E).

b. Maine: A copy of Maine's Model Substance Abuse Policy for Applicant (With MRO) (AR-096).

JMS- 000056

D. Vermont: An applicant/Associate with a contingent offer of employment must receive the Drug Testing Notice for Applicant (Vermont) (AR-096A) prior to taking his/her drug test.

E. Washington: No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:

1. The person's status as qualifying for protection under the state's medical marijuana law; or
2. A registered qualifying patient's positive drug test for marijuana components or metabolites, unless the patient used, possessed or was impaired by marijuana in any Kohl's location or in the performance of Kohl's business.

To qualify for protection under Washington's medical marijuana law, a patient must possess a signed statement on tamper-resistant paper from a Washington-licensed physician, physician assistant, naturopath, or advanced registered nurse practitioner who advised the patient of marijuana's risks and benefits and advised the patient that he or she may benefit from the medical use of marijuana.

V. Drug Test Collection Facilities

A. It is important that each store is using the correct Drug Screen Collection Site. A complete listing of collection site facilities is provided when ordering a drug test through Quest Diagnostics.

VI. Additional Testing Information

A. Kohl's reserves the right to require an Associate to submit to a breath, blood and/or urine alcohol/drug test when it has reasonable suspicion concerning an Associate's violation of this policy or the Associate has been involved in a workplace accident. Factors creating a reasonable suspicion include, but are not limited to, impairment, such as difficulties in maintaining balance, on-the-job accidents, slurred speech, body odors, bloodshot eyes, impaired judgment, or inability to perform his/her job in a safe manner.
B. Prior to an Associate completing a drug test based on reasonable suspicion or a workplace accident, the Associate's Manager, Corporate, DS, or Territory HR Manager, and District LP Manager (if applicable) need to discuss the incident/accident details. Human Resources will make the final decision as to whether a drug test should be administered in accordance with this policy.

C. Distribution Centers:

1. If an Associate is involved in an accident, which involved damage to company property that is outside of normal daily wear and tear on the building or equipment, a post accident drug test will be performed. Montana: Post-accident testing will be performed only for accidents resulting in damages in excess of $1,500 or bodily injury.

2. If an Associate has an accident on power or non-power related equipment, which requires any associate to seek medical treatment, a post-accident drug test will be performed.

D. Guidelines: The guidelines for sending an Associate for a drug test related to a workplace accident or reasonable suspicion are:

1. The Associate must sign the Acknowledgement of Notice, Consent, and Release Form (AR-016E). The form must be maintained in the Associate's medical file.
2. The Associate must be given a chain of custody form and must report to the designated drug testing facility within 24 hours of being notified a drug test has been requested.
3. In select Distribution Centers, on-site drug testing may be administered by trained executives or on-site nurses. The on-site drug testing kit may be used in these circumstances. The two results available

a. Negative/Clear: not necessary to send the Associate to an off-site facility for post-accident or reasonable suspicion testing.
b. Inconclusive: a urine test is required to be completed at an off-site facility or in the building where applicable within 24 hours of being notified that a drug test has been requested

EXHIBIT 3

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                                                      GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                  DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

September 29, 2014

Dallas Moon
N56 W17000 Ridgewood Drive
Menomonee Falls Wisconsin 53051

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 383264-129109
Right to Sue: Moon / Dallas Moon Kohl`s Department Stores, Inc.

Dear Dallas Moon,

This letter informs you that the above-referenced complaint was filed with the Department of Fair
Employment and Housing (DFEH) has been closed effective September 29, 2014 because an immediate
Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision
(b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against
the person, employer, labor organization or employment agency named in the above-referenced
complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity
Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure
or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc:

1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

2

## BEFORE THE STATE OF CALIFORNIA

3

## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

4

5

6

In the Matter of the Complaint of                    DFEH No. 383264-129109

7

Dallas Moon, Complainant.
N56 W17000 Ridgewood Drive

8

Menomonee Falls Wisconsin 53051

9

10

vs.

Dallas Moon  Kohl`s Department Stores, Inc.

11

Respondent.
N56 W17000 Ridgewood Drive

12

Menomonee Falls,  Wisconsin 53051

13

14

15

Complainant alleges:

16

1. Respondent **Kohl`s Department Stores, Inc.** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).  Complainant believes respondent is subject to the FEHA.

17

18

2. On or around **January 22, 2014**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Retaliation Denied a good faith interactive process, Denied employment, Denied reasonable accommodation, Terminated,** .  Complainant believes respondent committed these actions because of their: **Disability, Engagement in Protected Activity, Medical Condition - including Cancer** .

19

20

21

3. Complainant **Dallas Moon** resides in the City of , State of .  If complaint includes co-respondents please see below.

22

FEH 902-1

-5-

*Complaint – DFEH No. 383264-129109*

Date Filed: September 29, 2014

1

2

**Additional Complaint Details:**

3

In June 2006, I was hired as a Material Handler at the Kohls Distribution Center in
Patterson, California. My performance reviews were positive and I enjoyed a good
reputation as a valuable employee for almost seven-and-a-half years.   In 2011, I was
diagnosed with acute anxiety. My primary care physician agreed with a local clinics
determination that I would be a good candidate for a medical marijuana prescription. A
legally operating medical marijuana dispensary reviewed the medical case write-up and
issued me a valid prescription.My condition has never affected my work or personal life,
and I used the medicine very sparingly, at most once every two or three months.  I
never administered my prescription within three days of when I was scheduled for work
or had parental duties. I was greatly comforted by the fact that Kohls is a very
progressive employer (or so I thought) and actually has a written policy promising it will
not discriminate against employees who have valid medical marijuana prescriptions. On
January 14, 2014, I was unloading a trailer as part of my normal duties.  Three hours
into my shift and after I had lifted numerous cartons and placed them on a conveyor
belt, I felt a sharp pain in the middle of my back. I reported my discomfort to my
immediate supervisor, Maudester Kimberly Hardin.  Ms. Hardin instructed me to go
immediately to US Health Works, the companys designated health services provider for
workers compensation purposes.  I was diagnosed with a severe muscle strain in the
lower back and placed on modified duty until the condition healed. While at the US
Health Works facility, I was told it was Kohls policy that any employee injured at work
must submit to mandatory drug screening before medical treatment would be provided.
I was never given an acknowledgement form about the testing policy, but did submit to
the testing procedure because I wanted to receive medical attention.On January 16, I
was told over the phone that I had tested positive for minimal amounts of marijuana
metabolites. The Kohls representative asked me a series of questions, including the last
time I used medical marijuana.  I told the representative I had taken it after work
January 10, four days before having to report to work, which was the date of injury. On
January 21, I was called into a meeting with Mr. Maurice Barrera, Operations Manager,
and Ms. Irma Ochoa from Kohls human resources.  They told me the results of the tests
were positive and asked if I was aware of that.  I responded that I knew about the test
results, and explained that I had a valid medical marijuana prescription. They never
talked to me about accommodations and made no offer to accommodate my medical
condition at Kohls.  They never gave me a chance to explain the test results or that they
were the result of legal use of medical marijuana.  They told me I was going to be
suspended and that the issue was being referred to Kohls corporate human resources
and legal departments.  On January 22, I called and left a voice mail for Ms. Elizabeth
(last name unknown), a regional human resources manager in San Bernardino,
California, and Ms. Ochoas supervisor.  Elizabeth called me back the next day and I
tried to inform her about my status as a medical marijuana cardholder.  I also tried to
explain that the trace amount of metabolites was itself proof that I was not intoxicated.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

-6-

*Complaint – DFEH No. 383264-129109*

FEH 902-1

Date Filed: September 29, 2014

She was very rude and insisted that the fact the test results were positive proves you were under the influence while at work.  This is not true, I was not nor have I ever been under the influence of marijuana at work. Ms. Ochoa called back the next day and left a voicemail stating that I had been terminated from Kohls. I hired an attorney to try to resolve this informally with Kohls but he received a terse letter that ignored the facts of the case and indicated Kohls refusal to discuss this with me. Therefore, I feel that I have no choice but to get a right to sue letter from the DFEH and pursue this matter in court.

VERIFICATION

I, **Kurt W. Dreger**, am the Attorney for Complainant in the above-entitled complaint.   I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On September 29, 2014, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Livermore, CA**
**Kurt W. Dreger**

FEH 902-1

-8-

*Complaint – DFEH No. 383264-129109*

Date Filed: September 29, 2014