1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUSTIN SHEPHERD,                         No.  1:14-cv-01901-DAD-BAM

12              Plaintiff,

13        v.                                  ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANT'S
14   KOHL'S DEPARTMENT STORES, INC.,          MOTION FOR SUMMARY JUDGMENT

15              Defendants.                   (Doc. No. 46)

16

17        This matter is before the court on defendant's motion for summary judgment on all

18   claims.  A hearing on the motion was held on July 5, 2016.  Attorneys Anthony Sperber and Kurt

19   Dreger appeared at that hearing on behalf of plaintiff and attorney Leila Narvid appeared for the

20   defendant.  The court has considered the parties' briefs and arguments.  For the reasons discussed

21   below, the court will grant defendant's motion in part and deny it in part.

22                              **BACKGROUND**

23        The facts of this case are largely undisputed.  Plaintiff was hired by Kohl's to work as a

24   material handler at its distribution center in Patterson, California in June 2006.  As part of his

25   hiring, he signed a written agreement which included a provision which stated he was an at-will

26   employee.  Plaintiff had generally positive attendance and performance reviews, and was

27   promoted to assistant shift supervisor in 2007.  Plaintiff experienced some negative performance

28   reviews during 2010 and early 2011.  In August 2011, plaintiff was diagnosed with acute and

1

chronic anxiety and received a recommendation for medical marijuana.  Plaintiff did not disclose that recommendation for, or his use of, medical marijuana to his employer.  In 2012, defendant updated its personnel policies to include exceptions to its drug testing and substance abuse policies, stating (as described further below) that employees in certain states, including California, who had a valid medical marijuana recommendation would not be discriminated against on that basis in hiring, termination, or other employment actions.  Plaintiff testifies he reviewed those policies and relied on them in electing to continue using medical marijuana to treat his anxiety and to cease looking for a new job.

On January 14, 2014, plaintiff strained his back at work while unloading cargo from a trailer.  His supervisor advised him to go to U.S. HealthWorks, which is defendant's health care provider for worker's compensation purposes.  There is some dispute about whether plaintiff was told he would be required to take a drug test in order for treatment to be provided.  Ultimately, he signed a form consenting to a drug test.  Two days later, on January 16, 2014, plaintiff received a call from U.S. HealthWorks advising him he had tested positive for trace amounts of marijuana metabolites.  Plaintiff knew he had used marijuana while off-duty several days prior to the injury and that metabolites of the drug remained in one's system for some time, and was therefore unsurprised by the test results.

Five days after the call from U.S. HealthWorks, on January 21, 2014, plaintiff was called into a meeting with Maurice Barrera and Irma Ochoa, respectively the local operations manager and human resources manager for defendant.  Barrera and Ochoa asked plaintiff about his drug test results.  Plaintiff advised them he used medical marijuana to treat his anxiety.  Plaintiff showed Barrera and Ochoa the recommendation for his medicinal marijuana, which he had in his locker at work.  At the end of the meeting, Barrera and Ochoa suspended plaintiff from work.

The next day, on January 22, 2014, plaintiff left a voicemail for Elizabeth Barnick, a corporate human resources director and Ochoa's superior.  Barnick returned plaintiff's call on January 23, 2014, and was apparently unreceptive to any assertions that plaintiff was not under the influence at work, and only used marijuana in conjunction with his valid diagnosis for anxiety, stating, "You should have chosen a different medication."  On January 24, 2014, Ochoa

1  left plaintiff a voicemail, saying he was terminated from employment, effective immediately, with

2  no further explanation.  Shortly thereafter, he received an "associate counseling form" from

3  defendant, which asserted he had violated three of the company's guidelines:  (1) he reported to

4  work in a condition unfit to perform his duties or under the influence of a controlled substance;

5  (2) he violated a safety rule pertaining to specific work areas; and (3) he acted "in conflict with

6  the interest of Kohl's."  (Doc. No. 54 at 7.)  This suit followed.

7       This case was removed here on diversity grounds from Stanislaus County Superior Court

8  on December 1, 2014.  (Doc. No. 1.)  Plaintiff's second amended complaint states seven state law

9  causes of action:  (1) disability discrimination in violation of California's Fair Employment and

10  Housing Act ("FEHA"); (2) failure to engage in an interactive process in violation of the FEHA;

11  (3) failure to reasonably accommodate in violation of the FEHA; (4) invasion of privacy in

12  violation of the California Constitution; (5) wrongful termination in violation of public policy; (6)

13  breach of implied contract and the covenant of good faith and fair dealing; and (7) defamation.

14  (Doc. No. 44.)  Defendant filed a motion for summary judgment on June 6, 2016.  (Doc. No. 46.)

15  Plaintiff filed an opposition on June 21, 2016.  (Doc. No. 52.)  Defendant filed its reply on June

16  28, 2016.  (Doc. No. 56.)

17                                   LEGAL STANDARD

18       Summary judgment is appropriate when the moving party "shows that there is no genuine

19  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

20  Civ. P. 56(a).

21       In summary judgment practice, the moving party "initially bears the burden of proving the

22  absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

23  (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party

24  may accomplish this by "citing to particular parts of materials in the record, including

25  depositions, documents, electronically stored information, affidavits or declarations, stipulations

26  (including those made for purposes of the motion only), admissions, interrogatory answers, or

27  other materials" or by showing that such materials "do not establish the absence or presence of a

28  genuine dispute, or that the adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.).  *See also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1  trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

2  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

3  *Matsushita*, 475 U.S. at 587 (citations omitted).

4      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

5  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

6  party." *Walls v. Central Costa County Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011).  It is

7  the opposing party's obligation to produce a factual predicate from which the inference may be

8  drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

9  *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

10  party "must do more than simply show that there is some metaphysical doubt as to the material

11  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

12  nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation

13  omitted).

14                          **ANALYSIS**

15      *1.   The FEHA Claims*

16      Plaintiff's first three causes of action allege defendant violated the FEHA.  The analysis of

17  each of these claims is instructed by the application of the decision in *Ross v. RagingWire*

18  *Technologies*, 42 Cal. 4th 920 (2008).  In *RagingWire*, the California Supreme Court held the

19  FEHA was not impacted by the Compassionate Use Act, which ostensibly legalized medical

20  marijuana in California.  *Id.* at 924.  That act, which provides immunity against criminal

21  prosecution under two state statutes, made no other changes in the legal status of marijuana.  *Id.*

22  at 924.  Because the understanding of the holding in that case informs the analysis of each of

23  these claims, the FEHA claims are addressed in reverse order, starting with plaintiff's cause of

24  action for failure to accommodate, which is squarely controlled by the decision in *RagingWire*.

25          a.   Third Cause of Action – Failure to Accommodate Under the FEHA

26      California Government Code § 12940 states "[i]t shall be an unlawful employment

27  practice . . . (a) For an employer, because of the . . . physical disability [or] medical condition . . .

28  of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from

                                    5

1   employment." *See also RagingWire*, 42 Cal. 4th at 925.   Because an employer may discharge or

2   refuse to hire someone who would be "unable to perform his or her essential duties even with

3   reasonable accommodations," California Government Code § 12940(a)(1)–(2), the statute

4   "inferentially requires employers in their hiring decisions to take into account the feasibility of

5   making reasonable accommodations." *RagingWire*, 42 Cal. 4th at 925–26.  However, the FEHA

6   "does not require employers to accommodate the use of illegal drugs," as "[n]o state law could

7   completely legalize marijuana for medical purposes because the drug remains illegal under

8   federal law, even for medical users." *Id.* at 926 (citations and quotations omitted).  Because the

9   "operative provisions of the Compassionate Use Act (Health & Saf. Code, § 11362.5) do not

10   speak to employment law," but rather merely provide immunity to criminal prosecution under

11   California Health and Safety Code §§ 11357 and 11358, the court held that a "plaintiff cannot

12   state a cause of action under the FEHA based on defendant's refusal to accommodate his use of

13   marijuana." *Id.* at 928–31.

14         Since the decision in *RagingWire* conclusively forecloses his third cause of action for

15   failure to reasonably accommodate in violation of the FEHA, plaintiff instead advances several

16   other arguments.  First, plaintiff argues defendant waived its right to rely on *RagingWire* as a

17   defense because it implemented policies prohibiting discrimination against medical marijuana

18   card holders who test positive for medical marijuana in 2012, four years after the *RagingWire*

19   decision.  (Doc. No. 52 at 40–41.)  Second, plaintiff claims defendant is estopped from relying on

20   *RagingWire* as a defense for similar reasons. (Doc. No. 52 at 41–44.)  Third, plaintiff argues

21   *RagingWire* is inapplicable, essentially because his FEHA claims are based on defendant's failure

22   to follow its own policies.  (Doc. No. 52 at 44–45.)  Finally, plaintiff argues his FEHA claims are

23   based on defendant's withdrawal of an already existing accommodation they provided to him, an

24   issue not litigated in *RagingWire*.  (Doc. No. 52 at 45–46.)  None of plaintiff's arguments in this

25   regard are persuasive.

26         "[W]aiver is the intentional relinquishment of a known right after knowledge of the facts."

27   *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (quotations and citations omitted).  "The

28   object of estoppel is to prevent a person from asserting a right which has come into existence by

1   contract, statute or other rule of law where, because of his conduct, silence or omission, it would

2   be unconscionable to allow him to do so." *Westoil Terminals Co. v. Ind. Indem. Co.*, 110 Cal.

3   App. 4th 139, 151–52 (2003).

4         In contrast to both of these affirmative defenses stands the California Supreme Court's

5   holding in *RagingWire*. As defendant correctly argues, *RagingWire* did not "create a right" under

6   the FEHA which employers can relinquish: it simply acknowledged a plaintiff cannot state a

7   claim under the FEHA based on an employer's failure to accommodate medicinal marijuana

8   usage. *See* 42 Cal. 4th at 931 ("[P]laintiff cannot state a cause of action under the FEHA based

9   on defendant's refusal to accommodate his use of marijuana."). Put another way, it does not

10  violate the FEHA to terminate an employee based on their use of marijuana, regardless of why

11  they use it, and the Compassionate Use Act did not change that. *Id.* at 926–28. A defendant

12  cannot waive into the ability to be sued for something that does not violate the law. *See, e.g.*,

13  *Nyberg v. Portfolio Recovery Assocs., LLC*, Case. No. 3:15-cv-01175-PK, 2016 WL 3176585, at

14  *3 (D. Ore. June 2, 2016) ("[F]ailure to state a claim for relief is a negative defense, not an

15  affirmative defense."); *Phelps v. City of Parma*, Case No. 1:14-cv-00085-EJL-REB, 2015 WL

16  893112, at *2 (D. Idaho Mar. 2, 2015) (noting that, even if negative defenses were stricken from

17  the pleadings, plaintiff "would still have the burden of proving his *prima facie* case and

18  Defendants would still be entitled to argue that he does not state a claim upon which relief can be

19  granted").

20        To the extent plaintiff attempts to argue around the holding in *RagingWire* by asserting his

21  FEHA claim is based on defendant's failure to follow its own policies, the court is unpersuaded.

22  (Doc. No. 52 at 45.) Plaintiff presents no authority, and this court has found none, suggesting a

23  cognizable FEHA claim can be based simply on an employer's failure to abide by policies not

24  required by FEHA. While the failure to abide by its own policies may be a breach of an implied-

25  in-fact contract, for the reasons discussed below, refusing to accommodate an employee's

26  marijuana usage does not violate FEHA. *See RagingWire*, 42 Cal. 4th at 931.

27        Similarly, plaintiff's attempt to distinguish *RagingWire* by characterizing his termination

28  as a withdrawal of a pre-existing accommodation is unavailing. The undisputed evidence before

7

1    the court on summary judgment establishes that the first time defendant knew of either plaintiff's

2    disability or his medical marijuana recommendation was on January 21, 2014, when plaintiff

3    advised Ochoa and Barrera of these facts in his meeting following his positive drug test.  (Doc.

4    No. 53 at 3, 6.)  Plaintiff  was terminated via voicemail three days later, and was suspended in the

5    intervening time.  In no sense of the word can defendant be described as having accommodated

6    plaintiff's use of marijuana given these undisputed facts.  Given the above, defendant's motion

7    for summary judgment must be granted as to plaintiff's third cause of action.

8              b.   Second Cause of Action – Failure to Engage in an Interactive Process Under

9                   FEHA

10        California Government Code § 12940 states it is "an unlawful employment practice . . .

11   [f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the

12   employee or applicant to determine effective reasonable accommodations, if any, in response to a

13   request for reasonable accommodation by an employee or applicant with a known physical or

14   mental disability or known medical condition."  Cal. Gov't Code § 12940(n).  California courts

15   have held this requirement requires employers to engage in an interactive process "only if a

16   reasonable accommodation was possible."  *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal.

17   App. 4th 952, 980–81 (2008).  *See also Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359,

18   379 (2015); *Scotch v. Art Inst. Of Cal.-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1018–19 (2009).

19   "[T]he employee who brings a section 12940(n) claim bears the burden of proving a reasonable

20   accommodation was available before the employer can be held liable under the statute."  *Nadaf-*

21   *Rahrov*, 166 Cal. App. 4th at 984.

22        Obviously, defendant cannot be compelled to accommodate plaintiff's medicinal

23   marijuana use.  *See RagingWire*, 42 Cal. at 930.  To the extent the only remedy sought by

24   plaintiff from the interactive process was one this court cannot force defendant to accept—i.e.,

25   that plaintiff be allowed to use medical marijuana or at least not be terminated because of his

26   use—this claim must fail.  It would be futile to compel a process seeking only a result the

27   employer could not be made to accept.  *See Swonke v. Sprint, Inc.*, 327 F. Supp. 2d 1128, 1137

28   (N.D. Cal. 2004) ("The Court cannot impose upon the employer an obligation to engage in a

8

1    process that was guaranteed to be futile."). At the hearing on the pending motion, however,

2    plaintiff's counsel represented that, if given a chance to participate in the interactive process,

3    plaintiff would have switched medications or stopped using marijuana, rather than lose his job.

4    However, there is no evidentiary support in the record before this court on summary judgment for

5    this contention, upon which plaintiff would bear the burden of proving at trial. Accordingly,

6    summary judgment must be granted for defendant on this claim. *See Oracle Corp.*, 627 F.3d at

7    387.

8           Even assuming plaintiff could provide evidence of another alternative for accommodating

9    his anxiety at trial, his claim in this regard must still fail. This is because there is no causal link

10   between defendant's decision to terminate plaintiff and its failure to engage in the interactive

11   process. The undisputed evidence before this court on summary judgment is that, for all of

12   defendant's agents involved in this decision, plaintiff's positive test reflecting his use of

13   marijuana was the sole reason for his termination. There is no evidence before the court that

14   defendant was actually motivated by plaintiff's disability rather than his chosen treatment for the

15   disability.[1] Whether defendant's agents possessed the erroneous belief that a positive test for

16   marijuana metabolites necessary implied plaintiff was impaired at work is immaterial. There is

17   simply no evidence before the court on summary judgment that, had plaintiff engaged in an

18   interactive process, he would not have been terminated for testing positive for marijuana.

19   Without a causal link between the failure to engage in the interactive process and plaintiff's

20   ultimate termination, there can be no recovery since the damages to plaintiff are not connected to

21   defendant's alleged violation of the law. *See Scotch*, 173 Cal. App. 4th at 1018–19. Summary

22   judgment in favor of defendant is therefore appropriate with respect to plaintiff's second cause of

23   action as well.

24   /////

25   _____

26   [1]  Plaintiff's counsel argued at the hearing on the pending motion that discrimination on the basis
     of a medication for a disability is tantamount to discrimination on the basis of the disability itself.

27   While that is undoubtedly true for medications generally seen as benign, there is no reason to
     believe it to be true for treatments the efficacy and legality of which are still contested at both the

28   state and federal levels of government.

1            c.   <u>First Cause of Action – Disability Discrimination in Violation of FEHA</u>

2          Finally, summary judgment in favor of defendant is also appropriate as to plaintiff's first

3 cause of action for the reasons already addressed above:  namely, there is no evidence before the

4 court at this stage of the litigation that plaintiff was terminated because of his disability, rather

5 than because of the manner in which he chose to treat his disability.

6          While a plaintiff generally has an initial burden of establishing a *prima facie* case of

7 intentional discrimination, when an employer moves for summary judgment on a disparate

8 treatment claim in a FEHA case, "'the burden is reversed . . . because the defendant who seeks

9 summary judgment bears the initial burden.'"  *Dep't of Fair Emp't & Hous. v. Lucent Techs.,*

10 *Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th

11 215, 224 (1999)).  *See also Jackson v. Kaplan Higher Education*, LLC, 106 F. Supp. 3d 1118,

12 1123 (E.D. Cal. 2015); *Gunther v. Xerox Corp.*, Case No. 13-cv-04596-HSG, 2015 WL 5769619,

13 at *7 (N.D. Cal. Oct. 2, 2015) (assessing plaintiff's prima facie showing in light of this standard).

14 Therefore, "[t]o prevail on summary judgment, [the employer is] required to show either that (1)

15 plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a

16 legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment."  *Lucent*

17 *Techs., Inc.*, 642 F.3d at 745 (quotations omitted).

18         "'Disparate treatment' is intentional discrimination on prohibited grounds."  *DeJung v.*

19 *Superior Court of Sonoma Cty.*, 169 Cal. App. 4th 533, 549 n. 10 (2008).  The FEHA prohibits

20 discrimination in the workplace based on an employee's disability.[2]  Cal. Gov't Code § 12940(a).

21 Generally, California courts utilize the same burden-shifting test adopted in *McDonnell Douglas*

22 *Corp. v. Green*, 411 U.S. 792 (1973), requiring plaintiff's to show the following in order to set

23 out a *prima facie* case:

24                   (1) he was a member of a protected class, (2) he was qualified for
the position he sought or was performing competently in the
25                   position he held, (3) he suffered an adverse employment action,

26

---

27  [2]  Defendant contests whether plaintiff has come forward with sufficient evidence that he suffers
from a disability.  Since defendant is entitled to summary judgment with respect to this cause of
28 action on a different basis, as discussed below, the court does not reach this issue.

1

2

such as termination, demotion, or denial of an available job, and (4)
some other circumstance suggests discriminatory motive.

3   *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354–55 (2000).  "While the plaintiff's *prima facie*

4   burden is not onerous, he must at least show actions taken by the employer from which one can

5   infer, if such actions remain unexplained, that it is more likely than not that such actions were

6   based on a prohibited discriminatory criterion."  *Id.* at 355 (internal quotations and citations

7   omitted).

8        In this case, it is undisputed plaintiff was terminated because he tested positive for

9   marijuana.  (Doc. No. 53 at 4) (noting dispute concerning whether plaintiff's failure to disclose

10  his marijuana use to defendant played any role in his termination, but no dispute as to whether the

11  reason for termination was his positive marijuana test).  This is not only conceded by plaintiff, but

12  often highlighted in his opposition to the pending motion.  (*See, e.g.*, Doc. No. 52 at 17, 19, 34,

13  36–39, 60–61.)  Again, there is no evidence before the court on summary judgment that plaintiff

14  was fired because of his anxiety and not because of the manner in which he chose to treat that

15  condition.  Accordingly, defendant is entitled to summary judgment in its favor as to this FEHA

16  claim as well.

17        *3.   Invasion of Privacy*

18        The California Constitution specifically provides for a right to privacy.  Cal. Const. art. 1

19  § 1.  To state a cause of action for a violation of the right to privacy, plaintiff has the burden to

20  prove three elements:  "(1) a legally protected privacy interest; (2) a reasonable expectation of

21  privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of

22  privacy."  *Kraslawsky v. Upper Deck Co.*, 56 Cal. App. 4th 179, 185 (1997) (quoting *Hill v. Nat'l*

23  *Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994)).  These elements are to "be utilized to

24  screen out claims that do not involve a significant intrusion on a privacy interest protected by the

25  state constitutional privacy provision."  *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).

26  "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and

27  widely accepted community norms."  *Hill*, 7 Cal. 4th at 36.  "Whether plaintiff has a reasonable

28  expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious

11

1   invasion of privacy are mixed questions of law and fact." *Id.* at 40. "If the undisputed material

2   facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests,

3   the question of invasion may be adjudicated as a matter of law." *Id.* The analysis warrants a

4   case-by-case inquiry: "requirements . . . imposed on private employers by the California

5   constitutional right to privacy will depend upon the application of the elements and considerations

6   we have discussed to the employer's special interests and the employee's reasonable expectations

7   prevailing in a particular employment setting." *Id.* at 55.

8       Drug testing can give rise to privacy concerns. *See Loder*, 14 Cal. 4th at 897; *Hill*, 7 Cal.

9   4th at 41–43. However, "[a]dvance notice of drug testing minimizes . . . [any] intrusion on

10  privacy interests." *Smith v. Fresno Irrigation Dist.*, 72 Cal. App. 4th 147, 161 (1999). Further,

11  informed consent diminishes the reasonable expectation of privacy. *Hill*, 7 Cal. 4th at 43.

12  Consent is "generally viewed as a factor in the balancing analysis, and not as a complete defense

13  to a privacy claim." *Kraslawsky*, 56 Cal. App. 4th at 193. Company policies regarding drug

14  testing can be taken into account, *id.* at 187–88, as can an employee's understanding of what the

15  policies meant, *Luck v. S. Pac. Transp. Co.*, 218 Cal. App. 3d 1, 25 (1990).

16      Here, the evidence on summary judgment establishes plaintiff was aware he could be drug

17  tested long before he was injured. Plaintiff's declaration in opposition to summary judgment

18  states, while he was "never impaired at work, I was still uneasy about the possibility of a drug

19  test, and the possible negative consequences of one," which lead him to look for other prospective

20  employers prior to Kohl's adopting its medical marijuana policies. (Doc. No. 54 at ¶ 11.) After

21  defendant adopted its new policies in 2012, plaintiff understood that "as long as I used the

22  medicine at home and not close to a shift, I would be protected from getting fired *even if [I]*

23  *tested positive*." (Doc. No. 54 at ¶ 11) (emphasis added). Plaintiff testified at his deposition that

24  he was screened for drug use when he began his employment. (Doc. No. 48-1 at 9.) Plaintiff also

25  signed several forms during his employment acknowledging that he could be drug tested. (Doc.

26  No. 48-1 at 10–11.) While plaintiff argues that defendant's policies changed in 2012, rendering

27  the 2006 consent form he signed invalid (Doc. No. 52 at 51), nothing in defendant's changed

28  policies indicates employees would not be drug tested. Moreover, plaintiff's own declaration

1    indicates he remained aware he could be drug tested even after those new policies were put into

2    place.  Simply put, it is undisputed plaintiff knew he could be drug tested; he simply believed he

3    would not be fired as the result of a positive test.

4          Plaintiff also argues he should not have been drug tested at all in response to his injury,

5    because company policy only called for drug testing after an accident if it either (1) "involved

6    damage to company property that is outside of normal daily wear and tear on the building or

7    equipment" or (2) occurred on "power or non-power related equipment, which requires any

8    Associate to seek medical treatment."  (Doc. No. 55-7 at 4.)  In actuality, defendant's policy

9    *mandates* drug testing in those situations, but does not limit it to only those situations.  (*See id.*)

10   Indeed, elsewhere the same policy says, "Kohl's reserves the right to require an Associate to

11   submit to a breath, blood and/or urine alcohol/drug test when . . . the Associate has been involved

12   in a workplace accident."[3]  (Doc. No. 55-7 at 3.)  Plaintiff cannot create a reasonable expectation

13   of privacy out of a policy that generally permits alcohol and drug testing.  Given the evidence

14   before the court on summary judgment, no reasonable jury could conclude plaintiff had a

15   reasonable expectation of privacy such that he could not be drug-tested following a workplace

16   accident.[4]  As such, summary judgment in favor of the defendant on this cause of action is called

17   for.

18   /////

19

20   [3]  To the extent plaintiff attempts to characterize the harm he suffered as an "injury" but not an

21   "accident" (*see* Doc. No. 52 at 50), in order to suggest this general provision does not apply to
     him, the court is not persuaded.  An "accident" is "an event or condition occurring by chance or
     arising from unknown or remote causes."  Webster's Third New International Dictionary

22   (unabridged) ed: Philip Babcock Gove 2002.  An "injury" is "an act that damages, harms, or
     hurts."  *Id.*  The two terms are not opposed, and a single incident can be correctly labeled as both

23   an injury and an accident.  Here, plaintiff has presented no evidence that his injury did not occur
     by chance, or did not arise from an unknown cause.  Plaintiff has presented no reason why this

24   injury would not fall within the ambit of defendant's policy of allowing testing following a

25   workplace "accident."

26   [4]  Plaintiff's suggestion that his specific consent to the 2014 drug test was coerced (*see* Doc. No.

27   52 at 52), does not preclude the granting of summary judgment.  As plaintiff himself
     acknowledges, he knew he could be drug-tested, but merely thought he would not be fired for

28   testing positive for marijuana.  (Doc. No. 54 at ¶ 11.)

13

*4.     Wrongful Termination in Violation of Public Policy*

As plaintiff concedes in his opposition, his fifth cause of action for wrongful termination in violation of public policy is subject to dismissal if defendant prevails on summary judgment with respect to his FEHA and privacy claims.  Accordingly, and for the reasons set forth above, summary judgment in favor of defendant is also proper on plaintiff's wrongful termination in violation of public policy cause of action.

*5.     Breach of Implied Contract and the Covenant of Good Faith and Fair Dealing*

Defendant contends plaintiff was an at-will employee, as demonstrated by his signing of a form acknowledging as such when he commenced his employment in 2006.  (*See* Doc. No. 53 at 10.)  Plaintiff replies that defendant's policies were amended in 2012 to specifically protect individuals who are medical marijuana users in certain states from being terminated or discriminated against on that basis.  (*See* Doc. No. 52 at 54–58.)  According to plaintiff, these new policies therefore became terms of his employment agreement in 2012 and part of an implied contract, and thereby bound defendant not to breach them.  (*Id.*)

In California, "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other."  Cal. Lab. Code § 2922.  At-will employment "may be ended by either party at any time without cause, for any or no reason."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 335 (2000) (quotations and citations omitted).  "While the statutory presumption of at-will employment is strong, it is subject to several limitations."  *Id.*  Parties are free to agree to other limitations on an employer's termination rights.  *Id.* at 336.  While a "good cause" limitation is the most common, "[t]he parties may reach any contrary understanding, otherwise lawful, 'concerning either the term of employment or the grounds or manner of termination.'"  *Id.* (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680 (1988)).

"The contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations."  *Id.*  The California Supreme Court has identified several factors that may bear upon the existence and content of an implied-in-fact contractual limitation on discharging an employee, including personnel policies or practices of the employer, the employee's longevity of service,

14

1  actions or communications by the employer reflecting assurance of continued employment, or

2  standard industry practices. *Id.* at 336–37. "California law permits employers to implement

3  policies that may become unilateral implied-in-fact contracts when employees accept them by

4  continuing their employment." *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1508 (2012)

5  (citing *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 11 (2000)). A court is to look at the totality of the

6  circumstances, with an eye toward "seek[ing] to enforce the *actual* understanding" of the parties

7  to the agreement. *Guz*, 24 Cal. 4th at 337 (quoting *Foley*, 47 Cal. 3d at 677).

8       "Cases in California and elsewhere have held that at-will provisions in personnel

9  handbooks, manuals, or memoranda do not bar, or necessarily overcome, other evidence of the

10  employer's contrary intent, particularly where other provisions in the employer's personnel

11  documents themselves suggest limits on the employer's termination rights." *Id.* at 339 (citations

12  omitted). "On the other hand, most cases applying California law, both pre and post-*Foley*, have

13  held that an at-will provision in an *express written agreement*, signed by the employee, *cannot* be

14  overcome by proof of an implied contrary understanding." *Id.* at 340 n.10. This distinction has

15  subsequently been articulated more fully by the California Supreme Court as follows: "[A] clear

16  and unambiguous at-will provision in a written employment contract, signed by the employee,

17  cannot be overcome by evidence of a *prior or contemporaneous* implied-in-fact contract

18  requiring good cause for termination." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 389

19  (2006) (emphasis added). These statements by the state high court do not, of course, limit the

20  ability to modify an at-will employment agreement *after* the contract is signed to add termination

21  protections at a later time. *See also Weiner v. Fleischman*, 54 Cal. 3d 476, 488 (1991) ("[E]ven

22  where a contract has been solemnized by a writing, an oral modification of that written contract

23  may be proved by a preponderance of the evidence.").

24       Turning to the evidence before the court on summary judgment in this case, it is

25  undisputed plaintiff was a medical marijuana cardholder. It is also undisputed plaintiff signed a

26  statement acknowledging the at-will nature of his employment with defendant in 2006, when his

27  employment commenced. Finally, neither party disputes that, in 2012, the company amended

28  several of its written employment policies, including Policy 150 (the alcohol and substance abuse

policy) and Policy 126E (the drug testing policy) to include non-discrimination provisions concerning the use of medicinal marijuana in certain states.  Specifically, the provision added to Policy 150 reads:

> K.    State Specific Exceptions
>
> 1.  Alaska, Arizona, California, Colorado, D.C., Maine, Michigan, Montana, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont:  No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:
>
>> a. The persons' status as a registered medical marijuana cardholder; or
>>
>> b. A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites.

(Doc. No. 55-7 at 4.)  The provision added to defendant's Policy 126E stated:

> IV.    State Specific Requirements
>
> A.    Alaska, Arizona, California, Colorado, D.C., Maine, Michigan, Montana, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont:  No person will be discriminated against in hiring, termination or in imposing any term or condition of employment or otherwise be penalized based upon either:
>
>> 1.  The person's status as a registered medical marijuana cardholder; or
>>
>> 2.  A registered medical marijuana cardholder's positive drug test for marijuana components or metabolites.  Nothing in this policy prevents Kohl's from imposing discipline, up to and including termination for any Associate who used, possessed or was impaired by marijuana at any Kohl's location or in the performance of Kohl's business.

(Doc. No. 55-7 at 6.)

Defendant's person most knowledgeable, Tim Kuckelman, testified at his deposition in this matter that Kohl's "wanted to make sure as a company that we were not discriminating particularly against applicants and especially employees if they simply disclosed or the manager or supervisor became aware of the fact that they were in possession of a medical marijuana card." (Doc. No. 55-3 at 23–24.)  Defendant's policies were enacted in recognition of the movement in medical marijuana laws in a number of states and were for the benefit of both the employees and the company, according to Kuckelman.  (*Id.* at 24, 28).  Plaintiff has submitted a declaration in

1    opposition to the pending motion stating that, while he did not remember when he saw the revised

2    drug testing policies, he believed he "reviewed them on the Company's intranet site very soon

3    after they were announced," because he "made a point of staying up to date on new policies."

4    (Doc. No. 54 at 3.)  Further, plaintiff states that he "understood the policies to very clearly say

5    that as long as I used the [medical marijuana] at home and not close to a shift, I would be

6    protected from getting fired even if I tested positive." (Doc. No. 54 at 4.)  This led plaintiff to

7    abandon his efforts to look elsewhere for a job.  (Doc. No. 54 at 4.)

8          The existence and content of employer agreements not to terminate based on certain

9    assurances are particularly fact-driven inquiries.  As the California Supreme Court has

10   recognized:

11           Every case thus turns on its own facts.  Where there is no express
             agreement, the issue is whether other evidence of the parties'
12           conduct has a "tendency in reason" to demonstrate the existence of
             an actual mutual understanding on particular terms and conditions
13           of employment.   If such evidence logically permits conflicting
             inferences, a question of fact is presented.
14

15   *Guz*, 24 Cal. 4th at 337.  *See also Melbye v. Accelerated Payment Technologies*, No. 10cv2040-

16   IEG (JMA), 2012 WL 90477, at * 9 (S.D. Cal. Jan. 11, 2012) (denying defendant's motion for

17   summary judgment on the grounds that disputed issues of material fact existed as to whether there

18   was an implied in-fact agreement between the parties despite the written policies in place with

19   respect to the terms of employment).  Here, a reasonable jury could conclude from defendant's

20   policies and plaintiff's testimony that the parties agreed, subsequent to his 2006 acknowledgment

21   of the at-will nature of his employment, that plaintiff would not be discriminated against for his

22   medicinal marijuana use, since he was a registered medical marijuana cardholder.  Thus,

23   defendant has not established it is entitled to summary judgment as to plaintiff's sixth cause of

24   action for breach of an implied contract and the covenant of good faith and fairdealing.[5]

25   /////

26   _____

27   [5]  In its motion for summary judgment defendant advanced numerous other arguments concerning
     plaintiff's sixth cause of action.  (*See* Doc. No. 46 at 4, 25–28.)  However, at the hearing on the
     pending motion defense counsel conceded with respect to those other arguments, noting they
28   were actually only applicable to plaintiff's invasion of privacy claim.

6.      *Defamation*

Defendant asserts it is entitled to summary judgment on plaintiff's seventh cause of action for defamation both because its activity is protected by the common interest privilege and plaintiff has presented insufficient evidence of malice.  (Doc. No. 46 at 28–30.)  Plaintiff agrees the common interest privilege is applicable here in general, but argues that defendant lost its protection here because it acted with malice or reckless disregard.  (Doc. No. 52 at 60–62.)

"A claim for defamation requires proof of a false and unprivileged publication that exposes the plaintiff 'to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'"  *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 112 (2007) (quoting Cal. Civ. Code § 45).  A communication is privileged, and thus cannot be the basis for a defamation claim, when it is made without malice by one person with an interest in the communication to another interested party.  Cal. Civ. Code § 47(c).  If the privilege applies and there is no demonstration of malice, the privilege is a complete defense to defamation.  *See King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442 (2007).  "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."  *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370–71 (2003) (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976)).  Evidence sufficient to establish negligence is insufficient to establish malice, because the defendant must have shown "a reckless or wanton disregard for the truth, so as to reasonably imply a wilful [sic] disregard for or avoidance of accuracy."  *Id.* at 1371 (quoting *Roemer v. Retail Credit Co.*, 3 Cal. App. 3d 368, 371–72 (1970)).

Here, the Associate Counseling Form (the "termination form") states plaintiff sought medical treatment and "was tested for drugs per company policies and protocol.  The result of that Drug test was positive for a controlled substance."  (Doc. No. 54 at 7.)  According to the termination form, this violated three of Kohl's policies: (1) "[r]eporting to work in a condition unfit to perform your duties or under the influence of alcohol, illegal non[-]prescription drugs or

18

1   other intoxicants or controlled substances.  Using, consuming or selling illegal non-prescription

2   drugs, alcohol or other intoxication or controlled substances on Company property"; (2)

3   "Violating Safety rules pertaining to specific work areas"; and (3) "Acting in conflict with the

4   Interest of Kohl's."  (Doc. No. 54 at 7.)  There is also no dispute that the only evidence of

5   plaintiff's impairment at work was the positive test result for marijuana metabolites.  Plaintiff has

6   come forward with evidence on summary judgment that marijuana metabolites may be detectable

7   in a person's urine for up to 30 days after use, though impairment from the drug would last only a

8   few hours.  (*See* Doc. No. 55-1 at 2–3.)  He also has provided a declaration stating he "had a

9   personal policy of not using the medicine within several days of working," and testified at his

10  deposition that he had not used marijuana for "several days" before he worked in January 2014.

11  (Doc. Nos. 54 at 4; 55-5 at 8, 11.)  Based on this evidence, a reasonable jury could find plaintiff

12  was not in a condition unfit to perform his job, was not under the influence of alcohol or other

13  drugs at work, and/or was not using, consuming, or selling alcohol or other drugs at work.

14  Further, given the dearth of evidence presented by defendant of plaintiff's purported impairment,

15  a reasonable jury could conclude these statements were made with a "reckless or wanton

16  disregard for the truth," thus establishing malice and removing the protections of the common

17  interest privilege.  *See Noel*, 113 Cal. App. at 1371.[6]

18      Therefore, the undersigned concludes defendant has not established it is entitled to

19  summary judgment as to plaintiff's defamation claim.

20      *7.    Punitive Damages*

21      Finally, defendant argues it is entitled to summary judgment with respect to plaintiff's

22  claim for punitive damages because plaintiff cannot prove the decision-makers behind his

23

24  ─────────────────────
    [6]  Defendant's arguments that such conduct is at most merely negligent, and not reckless, are
25  unavailing.  A jury could determine that, given the complete lack of evidence available to
    defendant's employees Barrera, Ochoa, and Barnick from which to conclude plaintiff was ever
26  impaired at work, that the defendant acted recklessly in so documenting in plaintiff's termination
    form.  (*See* Doc. No. 55-1 at 27–28, 32–34, 36–37, 59; No. 55-2 at 12–13, 20–22, 38–42.)
27  Further, plaintiff's statements that he did not believe Barrera, Ochoa, and Barnick had a personal
    vendetta against him, even if admissible, fail to conclusively establish that they did not act in
28  reckless disregard of the truth in documenting his termination.  (*See* Doc. No. 48-1 at 42–43, 49.)

1    termination had a sufficiently high enough level of discretion to warrant imposition of punitive

2    damages against the defendant corporation.  (Doc. No. 46 at 30.)  Plaintiff concedes Ochoa and

3    Barrera do not meet the test for corporate punitive liability, but asserts their decisions were

4    ratified by Barnick, defendant's Human Resources Director, and Dallas Moon, a corporate officer

5    and defendant's Vice President of Employment and Labor Law, thereby establishing punitive

6    damages liability.  (Doc. No. 52 at 62–64.)

7         California Civil Code § 3294 allows for punitive damages in non-contract claims "where

8    it is proven by clear and convincing evidence that the defendant has been guilty of oppression,

9    fraud, or malice."  Cal. Civ. Code § 3294(a).  Corporate employers are not liable for punitive

10   damages based on the acts of their employees unless an officer, director, or managing agent

11   authorized or ratified the act of oppression, fraud, or malice.  *Id.* § 3294(b).  Generally, these

12   terms require acting in "conscious disregard" of the plaintiff's rights.  *Id.* § 3294(c).  The

13   California Supreme Court has held this statute restricts "corporate punitive damage liability to

14   those employees who exercise substantial independent authority and judgment over decisions that

15   ultimately determine corporate policy."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999).

16   *See also Garcia v. New Albertson's, Inc.,* No. 2:13-CV-05941-CAS (JCGx), 2014 WL 4978434,

17   at * 7 (C.D. Cal Oct. 3, 2014).  "In order to demonstrate that an employee is a true managing

18   agent [§ 3294(b)] a plaintiff seeking punitive damages would have to show that the employee

19   exercised substantial discretionary authority over significant aspects of a corporation's business."

20   *Id.* at 577.  Corporate policies generally include the "general principles which guide a

21   corporation, or rules intended to be followed consistently over time in corporate operations."

22   *Taylor v. Tress, Inc.*, 58 F. Supp. 3d 1092, 1106 (E.D. Cal. 2014) (quoting *Cruz v. HomeBase*, 83

23   Cal. App. 4th 160, 167 (2000)).  These are "formal policies that affect a substantial portion of the

24   company and that are the type likely to come to the attention of corporate leadership."  *Roby v.*

25   *McKesson Corp.*, 47 Cal. 4th 686, 714–15 (2009).  Finally, punitive damages are generally

26   available for violations of FEHA, *see Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1147–

27   48 (1998), subject to the limitations noted above.

28   /////

20

1    Plaintiff argues Human Resources Director Barnick "most likely is a managing agent."

2    (Doc. No. 52 at 63.)  *White* makes clear it is plaintiff's burden to demonstrate a given employee

3    has sufficient discretionary authority to warrant the imposition of punitive damages.  *White*, 21

4    Cal. 4th at 577 ("[A] plaintiff seeking punitive damages would have to show that the employee

5    exercise substantial discretionary authority over significant aspects of a corporation's business.").

6    In *White*, the court found there was sufficient discretionary authority because the manager in

7    question oversaw eight stores and sixty-five employees, and had been delegated most, if not all,

8    of the responsibility for managing these stores, as established by testimony from the manager's

9    supervisors. 21 Cal. 4th at 577.   In *Roby*, the California Supreme Court assumed a mid-level

10   manager could be a corporate officer, but concluded that actions by a single supervisor, combined

11   with the one-time failure of higher-level managers "to take prompt responsive action," was

12   insufficient to establish a "conscious disregard" of that plaintiff's rights. 47 Cal. 4th at 715–16.

13       The only evidence before the court concerning Barnick's status as a managing agent is the

14   deposition testimony of Ochoa, who stated Barnick was her supervisor and held the title of

15   Human Resources Director, and that when an employee was to be terminated, the decision was

16   made jointly by Ochoa and Barnick, with approval from "corporate, HR director [presumably

17   Barnick], and legal." (Doc. No. 55-1 at 25–26, 48–49.)  This is not sufficient evidence from

18   which a jury could determine that Barnick's job responsibilities involved the exercise of

19   "substantial discretionary authority over significant aspects of a corporation's business." *White*,

20   21 Cal. 4th at 577.  Rather, this evidence demonstrates only that Barnick was one of several

21   people from whom approval was sought prior to a decision to terminate an employee.  It says

22   nothing  about Barnick's role in "determin[ing] corporate policy." *Id.* at 573.  Nor, even if

23   Barnick is a managing agent, is a one-time failure to take responsive action to an immediate

24   supervisor's decision sufficient to establish a "conscious disregard" of plaintiff's rights.  *See*

25   *Roby*, 47 Cal. 4th at 715–16.  Defendant is therefore entitled to summary judgment in its favor

26   with respect to plaintiff's claim for punitive damages.

27       Plaintiff also takes the position that Moon, who is indisputably a corporate officer, ratified

28   the termination decision by rejecting the demand letter sent to him by plaintiff's counsel.  (Doc.

21

No. 52 at 63.)   As indicated at the hearing on the pending motion, this argument is completely unpersuasive.  While Moon is a corporate officer, Federal Rule of Evidence 408 provides that "conduct or a statement made during compromise negotiations about the claim" is "not admissible . . . either to prove or disprove the validity . . . of a disputed claim."  Correspondence between counsel for the purpose of compromise negotiations is generally excludable under Rule 408.  *See E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545 (10th Cir. 1991).  The purpose of Rule 408 is to encourage compromise and settlement of existing disputes.  *Josephs v. Pac. Bell*, 443 F.3d 1050, 1064 (9th Cir. 2005).  Exposing a corporate defendant to a punitive damages claim merely for responding to a demand letter from plaintiff's counsel would create an extraordinary disincentive to even acknowledge receipt of such a communication, let alone engage in actual settlement negotiations.  Exposure to an award of punitive damages cannot be supported by such a slender reed.

## CONCLUSION

Given the foregoing, defendant's motion for summary judgment (Doc. No. 46) is granted in part and denied in part, as follows:

1. Defendant's motion for summary judgment is granted as to plaintiff's first, second, and third causes of action (the FEHA claims), fourth cause of action (the invasion of privacy claim), and fifth cause of action (the wrongful termination claim).  Defendant's motion is also granted as to plaintiff's request for the award of punitive damages on any remaining claims.

2. Defendant's motion for summary judgment is denied as to plaintiff's sixth cause of action (breach of contract and the implied covenant of good faith and fair dealing) and seventh cause of action (defamation).

IT IS SO ORDERED.

Dated:   **August 2, 2016**                                          

UNITED STATES DISTRICT JUDGE